UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**Kenjoh Outdoor, LLC,**

       *Plaintiff*,

v.                                                      Case No.: 3:19-cv-328
                                                           Judge Thomas M. Rose

**Jack Marchbanks, Director,**

**Ohio Department of Transportation, et al.,**

       *Defendants.*

---

**ENTRY AND ORDER GRANTING MOTION TO DISMISS FOR FAILURE
TO STATE A CLAIM, ECF 14, AND TERMINATING CASE.**

---

Pending before the Court is Defendants' Motion to Dismiss for Failure to State a Claim. ECF 14. Because the complaint does not allege any constitutional violations, the motion will be granted.

    **I.**      **Background**

Plaintiff Kenjoh Outdoor, LLC erects and maintains billboards. (Compl. ¶ 8, ECF 1, PageID 3). The Ohio Administrative Code provides:

> No [billboard] application will be processed for a new permit when the applicant has any outstanding delinquent bills, including outstanding renewal fees for other permits, has modified a device prior to receiving approval from the advertising control section, or has erected or is maintaining an illegal device.

Ohio Admin. Code § 5501:2-2-05(D).

Kenjoh had a two-sided billboard in Sidney, Ohio, adjacent to Interstate 75 and within 500 feet of an interchange. ECF 1 (Complaint), ¶¶ 1, 9-10, 25, 35, PageID 2-5, Ex. C, PageID 19.

Only one side of the billboard faced I-75. Id. at ¶ 11, PageID 3.  Before building the billboard, Kenjoh submitted permit applications to ODOT, including one for the billboard. Id. at ¶ 15, PageID 3.  Kenjoh told Mark Jones, a new ODOT field representative, that the landowner "is willing to use the one side for on-premise sign . . .. Then [I'll] use the other side for [off-premise advertising]. Do [I] have a green light to proceed with this project[?]" Id. at ¶ 21, PageID 4, Ex. A, PageID 12. Jones replied, "[A]s long as the off-premise portion is not visible from the on ramp or I-75, then no permit is required from ODOT." Id. at ¶ 23, PageID 4, Ex. A, PageID 11.

Kenjoh built its billboard, without an ODOT permit, on September 1, 2017, and began renting space for off-premise advertising on the side not facing I-75. Id. at ¶¶ 24-26, 28, PageID 4.  In Spring 2018, Kenjoh applied to ODOT for permits at other locations. Id. at ¶ 30, PageID 5. On June 4, 2018, Kenjoh asked Jones about the status of its applications. Id. at ¶ 31, PageID 5, Ex. B, PageID 17.  Jones told Kenjoh (1) it had assured ODOT that its I-75 billboard was to be on-premise advertising only, (2) its billboard will be cited as an illegal device, and (3) all applications will be on hold until the billboard is removed. Id. at ¶ 31, PageID 5, Ex. B, PageID 16.

On June 21, 2018, Defendant Nathan Fling notified Kenjoh that its billboard was an illegal advertising device because it was adjacent to an ODOT-controlled route and within the required 500-foot setback of an interchange, in violation of the Ohio Admin. Code § 5501:2-2-02(A)(3)(a)(ii)). Id. at ¶¶ 33-35, PageID 5, Ex. C, PageID 19.  Fling's notice asked Kenjoh to voluntarily remove its billboard within thirty days or else the matter will go to the ODOT Director for a removal order. Id. at Ex. C, PageID 19.  Fling also allegedly placed all of Kenjoh's permit applications on hold in accordance with Ohio Admin. Code § 5501:2-2-05(D). Id. at ¶¶ 37, 54,

2

PageID 5, 7. Kenjoh subsequently removed the off-premise advertising from the side of the billboard not facing I-75. Id. at ¶ 38, PageID 5.

Kenjoh filed suit challenging the constitutionality of Admin. Code §5501:2-2-05(D) asserting that it constitutes a prior restraint in violation of the First Amendment and naming as defendants Jack Marchbanks, Director of the Ohio Department of Transportation, and Nathan Fling, Supervisor of ODOT's Advertising Device Control section. (Compl. ¶¶ 40-47, 48-56, ECF 1, PageID 6). Kenjoh claims Administrative Code §5501:2-2-05(D) is an unconstitutional prior restraint on speech both facially and as applied to Kenjoh because it conditions a speaker's right to speak on remedying alleged code violations without any procedural safeguards and it allows ODOT to hold permit applications in abeyance for an indeterminable amount of time. Kenjoh further claims Administrative Code §5501:2-2-05(D) is not narrowly tailored to serve a compelling governmental interest. Kenjoh also seeks to permanently enjoin ODOT from enforcing the rule. Id. at ¶¶ 40-47, PageID 6-8. Kenjoh seeks damages against Fling in his individual capacity, plus attorney and expert fees under 42 U.S.C. §§ 1983 and 1988 Id. at ¶¶ 6, 48-56, PageID 2, 7-8. Defendant has moved to dismiss. (ECF 14).

## II. Standard of Review

Federal Rules of Civil Procedure provide that, "after the pleadings are closed but within such time as not to delay the trial any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A court reviews a Rule 12(c) motion for judgment on the pleadings under the same standard as is applied to a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6). *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). A court grants a motion under Rule 12(c) when the movant has clearly established that there remains no genuine issue of material fact, and

3

that, as a matter of law, the movant is entitled to judgment. *JP Morgan Chase, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).

When ruling on such a motion, a court is required to view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the non-moving party. *Delaware River Port Authority v. Home Ins. Co.*, 1993 U.S. Dist. LEXIS 6749, at *3 (E.D. Pa. 1993). As such, the court must take as true the allegations of the pleadings of the non-movant; conversely, "all contravening assertions in the movant's pleadings are taken to be false." *Melton v. Bd. of Cnty. Comm'rs of Hamilton Cnty., Ohio*, 267 F. Supp. 2d 859, 862 (S.D. Ohio 2003). Yet, a "court need not accept as true [the non-movant's] legal conclusions or unwarranted factual inferences." *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 405 (6th Cir. 1998). Judgment on the pleadings is appropriate when "the plaintiff can undoubtedly prove no set of facts in support of the claims that would entitle relief." *E.E.O.C v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001); see also *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

**III. Analysis**

To improve and preserve the attractiveness of the nation's major highways, Congress in 1965 enacted the Highway Beautification Act, 23 U.S.C. § 131, requiring all states to effectively control outdoor advertising. The purpose of the Act is "to protect the public investment in such highways, to promote the safety and recreational value of public travel, and to preserve natural beauty." Id. § 131(a). Three years later, Ohio signed an agreement with the federal government for controlling advertising on interstates and federal-aid primary highways. This agreement, which ties 10% of Ohio's transportation funding to outdoor-advertising control, also established criteria for size, lighting, and spacing of advertising signs, displays, and devices consistent with

4

customary use. In response to the law and related federal initiatives, ODOT created an Advertising Device Control section to monitor and regulate the size, lighting and spacing of outdoor advertising displays along Ohio's highways.

In 1971, the Ohio legislature enacted Ohio Revised Code Chapter 5516 to govern outdoor advertising on interstates and federal-aid primary highways. Section 5516.01(A) defines "advertising device" to include "any outdoor sign, . . . billboard . . . designed, intended, or used to advertise or to give information in the nature of advertising, or any part thereof, the advertising or informative contents of which are visible from the main traveled way of any highway on the interstate system or primary system in this state." Section 5516.10 generally requires a person to apply to ODOT for a permit to build, use, maintain or operate any advertising device in certain areas along an interstate or primary highway. No permit shall be issued if, *inter alia*, the advertising device would be a traffic hazard or a danger to the safety of the traveling public. Ohio Rev. Code § 5516.10(B)(4)(e).

To effectuate the outdoor-advertising statutes, Ohio Rev. Code § 5516.03 authorizes ODOT to adopt, amend, and enforce rules necessary to carry out Chapter 5516, including sizing, lighting, spacing, and other conditions necessary to promote the safety of the traveling public and effect federal Highway Beautification provisions, standards, criteria and rules. Ohio's rules are codified in Chapter 5501:2-2 of the Ohio Administrative Code.

The Ohio rules for outdoor advertising include a setback rule for advertising devices near an interchange: "Advertising devices, whether or not visible to the main-traveled way of the interstate system, shall not be located at or within five hundred feet of an interchange or proposed

interchange." Ohio Admin. Code § 5501:2-2-02(A)(3)(a)(ii)).   This interchange-setback rule does not distinguish between on-premise and off-premise advertising devices.

Ohio Administrative Code Chapter 5501:2-2 also has rules on permits.   Kenjoh challenges a rule that precludes ODOT from processing an application for a new permit when the applicant has delinquent bills, modifies a device without authorization, or has erected or is maintaining an illegal advertising device. Ohio Admin. Code § 5501:2-2-05(D).

Kenjoh claims Ohio Admin. Code § 5501:2-2-05(D) is an unconstitutional prior restraint on speech because it "conditions a person's right to speak on remedying alleged code violations and . . . allows ODOT to hold permit applications for an indeterminable amount of time." ECF 1, ¶ 45, PageID 6.   Kenjoh also says the rule is not narrowly tailored to serve a compelling governmental interest, which Kenjoh says can be achieved through unspecified, less-restrictive means. Id. at ¶ 46, PageID 6.

"A prior restraint exists when speech is conditioned upon the prior approval of public officials," and any system of prior restraint carries a heavy presumption against its validity. See, e.g., *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975); *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty., Tennessee*, 274 F.3d 377, 391 (6th Cir. 2001) (quoting *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 889 (6th Cir. 2000)).   "[A]n ordinance which ... makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official— as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint." *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 151 (1969) (quoting *Staub v. City of Baxley*, 355 U.S. 313, 322 (1958)).   Plaintiff argues that the failure to place brief, specific time limits on

6

the decision-making process is a type of unbridled discretion the prior restraint doctrine is meant to prevent. See *Freedman v. Maryland*, 380 U.S. 51, 57 (1965); *East Brooks Books, Inc. v. City of Memphis*, 48 F.3d 220, 224, reh'g denied (6th Cir.), cert. denied, 516 U.S. 909 (1995).

"A prior restraint is any law 'forbidding certain communications when issued in advance of the time that such communications are to occur.'" *McGlone v. Bell*, 681 F.3d 718, 733 (6th Cir. 2012) (quoting *Alexander v. United States*, 509 U.S. 544, 550 (1993)); see also *Cummins v. Campbell*, 44 F.3d 847, 853 (10th Cir. 1994) ("Governmental action constitutes a prior restraint when it is directed to suppressing speech because of its content before the speech is communicated."). The prior restraint doctrine generally requires a time limit on noncommercial-speech permit decision making. *Freedman v. Maryland*, 380 U.S. 51, 58-59 (1965).

The prior-restraint doctrine, however, does not apply to commercial speech. *Discount Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509, 532 (6th Cir. 2012); *Henry v. City of Cincinnati*, No. C-1-03-509, 2005 U.S. Dist. LEXIS 48781, at *16 (S.D. Ohio Apr. 28, 2005) (noting the overbreadth and prior-restraint doctrines are generally inapplicable to commercial-speech restrictions). Since the prior-restraint doctrine does not apply, Ohio Admin. Code § 5501:2-2-05(D) is not required to have a time limit for deciding permit applications. See *Onsite Adv. Servs., LLC v. City of Seattle*, 134 F. Supp. 2d 1210, 1215 (W.D. Wash. 2001) (finding no Supreme Court or Ninth Circuit precedent for requiring a time limit for commercial sign-permit applications).

While content-based restrictions on noncommercial speech are subject to strict scrutiny, *Reed v. Town of Gilbert*, 576 U.S. 155, 135 S.Ct. 2218, 2226 (2015), content-based restrictions on commercial speech remain subject to only intermediate scrutiny. *Nationwide Biweekly Admin.,*

7

*Inc. v. Owen*, 873 F.3d 716, 732 (9th Cir. 2017) ("*Reed* did not relate to commercial speech . . . and therefore did not have occasion to consider [that doctrine]."); *GEFT Outdoor LLC v. Consol. City of Indianapolis & County of Marion*, 187 F. Supp. 3d 1002, 1016-17 (S.D. Ind. 2016) (finding on-premises/off-premises distinction that applies only to commercial speech subject to intermediate scrutiny, and noting most courts that have considered the question have held *Reed* is limited to noncommercial-sign regulations and does not affect precedent relating to commercial-sign regulations); *Contest Promotions, LLC v. City & Cty. of San Francisco*, No. 15-cv00093, 2015 U.S. Dist. LEXIS 98520, 2015 WL 4571564, at *4 (N.D. Cal. July 28, 2015), aff'd, 704 Fed. App'x 665 (9th Cir. 2017) ("*Reed* does not concern commercial speech, and therefore does not disturb the framework which holds that commercial speech is subject only to intermediate scrutiny as defined by the *Central Hudson* test."); *California Outdoor Equity Partners v. City of Corona*, No. CV 15-03172, 2015 U.S. Dist. LEXIS 89454, 2015 WL 4163346, at *10 (C.D. Cal. July 9, 2015) ("*Reed* does not concern commercial speech, let alone bans on off-site billboards. The fact that *Reed* has no bearing on this case is abundantly clear from the fact that *Reed* does not even cite *Central Hudson*, let alone apply it."); *Citizens for Free Speech, LLC v. Cty. of Alameda*, 114 F. Supp. 3d 952, 969 (N.D. Cal. 2015) (holding *Reed* does not alter the analysis for laws regulating off-site commercial speech); *Lamar Central Outdoor, LLC v. City of Los Angeles*, 245 Cal. App. 4th 610, 625-26, 199 Cal. Rptr. 3d 620, 630-31 (Cal. Ct. App. 2016) ("*Reed* . . . does not purport to eliminate the distinction between commercial and noncommercial speech. It does not involve commercial speech, and does not even mention *Central Hudson*. . . . [A]s we have seen, three of the justices joining the court's opinion in *Reed* expressed the view that on-site-off-site distinctions . . . are not content based and do not require strict scrutiny."

Ohio's outdoor-advertising laws, including Ohio Admin. Code § 5501:2-2-05(D), apply only to commercial devices. "Advertising device" is defined as "any outdoor sign, . . . billboard . . . designed, intended, or used to advertise or to give information in the nature of advertising, or any part thereof, the advertising or informative contents of which are visible from the main traveled way of any highway on the interstate system or primary system in this state." Ohio Rev. Code § 5516.01(A).

Additionally, time limits on decision making are generally not required for content-neutral permit regulations. *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 321-22 (2002) (involving political speech); *Covenant Media of S.C., LLC v. Town of Surfside Beach*, 321 Fed. App'x 251, 254 (4th Cir. 2009) (concluding a sign ordinance is content-neutral and thus need not include the decision-making timeframe required by *Freedman*); *Granite State Outdoor Adv., Inc. v. City of Clearwater*, 351 F.3d 1112, 1118 (11th Cir. 2003) ("Time limits are required when their lack could result in censorship of certain viewpoints or ideas, but are not categorically required when the permitting scheme is content-neutral."). Content-neutral regulations "are subject to intermediate scrutiny, asking whether the restriction is 'narrowly tailored to serve a significant government interest, and leave[s] open ample channels of communication.'" *McGlone v. Metro. Gov't of Nashville & Davidson Cty.*, 749 Fed. App'x 402, 405 (6th Cir. 2018) (quoting *Saieg v. City of Dearborn*, 641 F.3d 727, 735 (6th Cir. 2011)).

Accordingly, Ohio Admin. Code § 5501:2-2-05(D), whether deemed a content-based restriction on commercial speech, or a content-neutral regulation, is not subject to the prior-restraint doctrine and thus is not required to have a time limit on decision making. The rule is subject, at most, to intermediate scrutiny.

9

Kenjoh's suit includes a facial challenge to Ohio Admin. Code § 5501:2-2-05(D). Facial challenges, even those claiming an unconstitutional prior restraint of speech, carry a heavy burden. *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998). "Facial invalidation 'is, manifestly, strong medicine,' that '[is to be used] sparingly and only as a last resort.'" Id. (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)). To prevail on a facial free-speech challenge, the plaintiff "must demonstrate a substantial risk that application of the provision will lead to the suppression of speech." Id.

Kenjoh does not show Ohio Admin. Code § 5501:2-2-05(D) is facially unconstitutional. The rule says nothing about message content, and there is no allegation that its application is substantially likely to suppress speech based on message content. Nor does the rule allow for arbitrary or subjective governmental discretion. Further, the amount of time for holding applications for new permits is not "indeterminable" as Kenjoh claims, since the holding period terminates upon the applicant's compliance, such as removal of an illegal advertising device. Moreover, while an order by ODOT to remove an illegal advertising device is not appealable, a removal order is not absolute and non-reviewable. Under Ohio law, mandamus is available to correct an abuse of discretion by an administrative body when there is no statutory right of appeal. *State ex rel. Pipoly v. State Teachers Retirement Sys.*, 95 Ohio St.3d 327, 330, 2002-Ohio-2219, ¶ 14, 767 N.E.2d 719, 722 (Ohio 2002).

The challenged rule satisfies intermediate scrutiny. Ohio has significant governmental interests in requiring compliance with its outdoor-advertising laws and keeping illegal devices off the interstate and primary highways within its borders. Such interests are especially significant where, as in this case, an illegal device threatens safety by distracting drivers at or near an

interchange. See *Adams Outdoor Adv. Limited Partnership v. Penn. Dep't of Transp.*, 321 F. Supp. 3d 526, 539 (E.D. Pa. 2018), rev'd in part on other grounds, 930 F.3d 199 (3d Cir. 2019). These interests are not achieved through less-restrictive means. See id. The Ohio rule is narrowly tailored to advance its interest by reasonably requiring an applicant to remove any illegal devices before obtaining more permits.

Kenjoh decries ODOT's application of Ohio Admin. Code § 5501:2-2-05(D), by withholding permit applications while Kenjoh maintains an illegal advertising device. Kenjoh claims it was precluded from speaking until it removed "allegedly illegal advertising." ECF 1, ¶ 43, PageID 6. The rule leaves open means of communication, since it does not prohibit or limit an applicant from erecting or maintaining non-advertising billboards or signs on ODOT-regulated highways, advertising on non-ODOT controlled routes, or otherwise speaking. Nor does the rule affect existing permits.

Ohio has a substantial governmental interest in ensuring compliance with its outdoor-advertising laws—particularly those designed to protect the traveling public. The consequence of withholding permit applications incentivizes applicants to comply with the law. Addressing only Ohio's interest in prohibiting illegal signs, Kenjoh argues there are less-restrictive means for Ohio to achieve that interest, such as issuing a fine and removal order. Such remedies do not sufficiently further Ohio's substantial interest in ensuring compliance with its outdoor-advertising laws from those who seek a permit to advertise (or, for companies like Kenjoh, to help others to advertise) on Ohio's interstate and primary highways. Without the challenged rule, a non-compliant applicant can continue to obtain permits from ODOT while doing nothing to rectify its illegal (and perhaps dangerous) signage or pay required fees. Ohio Admin. Code § 5501:2-2-05(D)

furthers and is proportionate to Ohio's substantial interests in requiring compliance with its outdoor-advertising laws and keeping illegal devices off the interstate and primary highways within its borders. Such interests are especially significant where, as in this case, an illegal device threatens public safety. The rule does not prohibit a non-compliant applicant from advertising generally or erecting and maintaining advertising billboards on non-ODOT-regulated roads. Nor does the rule apply to existing ODOT permits.

Governmental interests in traffic safety and aesthetics are sufficient to justify content-neutral regulation of the non-communicative aspects of billboards, including spacing. *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 502 (1981). Ohio Admin. Code § 5501:2-2-02(A)(3)(a)(ii)) furthers Ohio substantial governmental interest in traffic safety; in this case, by reducing driver distraction near an interchange. See *Adams Outdoor*.

Neither does the distinction between on-site and off-site advertising denigrate the state's interest:

> The ordinance permits the occupant of property to use billboards located on that property to advertise goods and services offered at that location; identical billboards, equally distracting and unattractive, that advertise goods or services available elsewhere are prohibited even if permitting the latter would not multiply the number of billboards. Despite the apparent incongruity, this argument has been rejected, at least implicitly, in all of the cases sustaining the distinction between off-site and on-site commercial advertising. We agree with those cases and with our own decisions in *Suffolk Outdoor Advertising Co. v. Hulse*, 439 U.S. 808 (1978); *Markham Advertising Co. v. Washington*, 393 U.S. 316 (1969); and *Newman Signs, Inc. v. Hjelle*, 440 U.S. 901 (1979).
>
> In the first place, whether on-site advertising is permitted or not, the prohibition of off-site advertising is directly related to the stated objectives of traffic safety and esthetics. This is not altered by the fact that the ordinance is underinclusive because it permits

> on-site advertising. Second, the city may believe that off-site advertising, with is periodically changing content, presents a more acute problem than does on-site advertising. See *Railway Express*, 336 U.S., at 110. Third, San Diego has obviously chosen to value one kind of commercial speech—on-site advertising—more than another kind of commercial speech—off-site advertising. The ordinance reflects a decision by the city that the former interest, but not the latter, is stronger than the city's interests in traffic safety and esthetics. The city has decided that in a limited instance—on-site commercial advertising—its interests should yield. We do not reject that judgment. As we see it, the city could reasonably conclude that a commercial enterprise—as well as the interested public—has a stronger interest in identifying its place of business and advertising the products or services available there than it has in using or leasing its available space for the purpose of advertising commercial enterprises located elsewhere. See *Railway Express, supra*, at 116, (JACKSON, J., concurring); *Bradley v. Public Utilities Comm'n*, 289 U.S. 92, 97, (1933). It does not follow from the fact that the city has concluded that some commercial interests outweigh its municipal interests in this context that it must give similar weight to all other commercial advertising. Thus, off-site commercial billboards may be prohibited while on-site commercial billboards are permitted.

*Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 510–12 (1981).

Plaintiff sites to *Thomas v. Bright*, 937 F.3d 721, 730 (6th Cir. 2019), as support for finding this a content based-regulation. ECF 16, at PageID 77 (citing Id. at 730 ("Therefore, to determine whether the on-premises exception does or does not apply (i.e., whether the sign satisfies or violates the Act), the Tennessee official must read the message written on the sign and determine its meaning, function, or purpose.")). Plaintiff, however, ignores that *Thomas v. Bright*, involved non-commercial speech. Id. at 726 ("in this case, Tennessee applied the Act to restrict speech conveying an idea: 'non-commercial speech' that was not advertising nor commercial in any way, but might be labeled 'patriotic speech.'").

13

Similarly, Fling is not individually liable for damages under 42 U.S.C. § 1983 because (1) Kenjoh's billboard was illegally located too close to an interchange, and (2) Ohio Admin. Code § 5501:2-2-05(D) is not unconstitutional either facially or as applied to Kenjoh. Even if this were not the case, Fling is entitled to qualified immunity.

Qualified immunity shields government officials performing discretionary functions from § 1983 suits so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity applies to "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The clearly-established standard "requires that the legal principle clearly prohibit the [Defendant's] conduct in the particular circumstances before them," and this "requires a high degree of specificity." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018). Accordingly, "courts must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'" Id. (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)).

The Sixth Circuit has cautioned that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell*, 779 F.3d 421, 433-34 (6th Cir. 2015). "But when 'pleadings in the case are not ambiguous' and 'it is clear that no violation of a clearly established constitutional right could be found under any set of facts that could be proven consistent with the allegations or pleadings,' the Court is well within its discretion to grant a pre-answer motion to dismiss on the basis of qualified immunity." *Proctor v.*

14

*Krzanowski*, No. 1:19-cv-415, 2019 WL 6135081, 2019 U.S. Dist. LEXIS 200152, at *11 (W.D. Mich. Nov. 19, 2019) (quoting *Jackson v. Schultz*, 429 F.3d 586, 589-90 (6th Cir. 2005)).

Kenjoh's pleadings are unambiguous and fail to show that Fling violated any of Kenjoh's clearly-established constitutional rights. No court has held that Ohio Admin. Code § 5501:2-2-05(D) is unconstitutional or imposes a content-based restriction on speech. The complaint alleges that the ODOT field representative told Kenjoh in 2017 that no ODOT permit for the billboard is needed if the off-premise advertising portion is not visible from the interstate, and in 2018 that Kenjoh had assured ODOT that its billboard would be on-premise advertising only. However, there is no allegation, or anything in the July 21, 2018 notice to Kenjoh, showing Fling acted based on the billboard's off-premise advertising content. To the contrary, Fling asked Kenjoh to remove the billboard because it is illegally located within the required 500-foot setback of an interchange. See ECF 1, Ex. C, PageID 19. Kenjoh does not deny that it erected its billboard within 500 feet of an interchange. Nor does Kenjoh challenge the applicability or constitutionality of the Ohio interchange-setback rule.

Because there is no constitutional violation, Fling is entitled to qualified immunity. Even if Kenjoh's complaint is construed to allege that Fling acted based on an unconstitutional off-premise/on-premise distinction, he is still entitled to qualified immunity because Kenjoh's asserted right to be free from such distinction was not clearly established when Fling acted. In 2018, the off-premise/on-premise advertising distinction was not unconstitutional under then-existing Sixth-Circuit precedent. See *Wheeler v. Comm'r of Hwys.*, 822 F.2d 586, 590-94 (6th Cir. 1987) (upholding a Kentucky billboard law that distinguished between on-premise and off-premise advertising signs because of Kentucky's content-neutral justifications). Over a year later, the

Sixth Circuit ruled a Tennessee billboard law unconstitutional. *Thomas v. Bright*, 937 F.3d 721, 730-33 (6th Cir. 2019), r'hrg, en banc, denied, 2019 U.S. App. LEXIS 33256 (6th Cir. Nov. 6, 2019). In doing so, the court stated, for the first time, that *Wheeler* was overruled by the Supreme Court's decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015). *Thomas* at 724, 732. *Reed*, however, did not address commercial advertising or off-premise/on-premise distinctions, but rather a law that excepted ideological signs, political signs, and temporary directional signs from permitting requirements. *Reed* at 2224-25. Therefore, the off-premise/on-premise principle that Plaintiff claims made Fling's alleged conduct unconstitutional was not clearly established when Fling acted in 2018.

**IV.    Conclusion**

Because the Court finds no constitutional violations in the facts Plaintiff alleges, the Court **GRANTS** Defendants' Motion to Dismiss for Failure to State a Claim, ECF 14, and **TERMINATES** the instant case from the dockets of the United States District Court, Southern District of Ohio, Western Division at Dayton.

**DONE** and **ORDERED** this Thursday, September 10, 2020.


s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE